Our first case for argument is Hutchens v. Chicago Board of Education. Ms. Hutchens. May it please the Court. Good morning, Your Honors. My name is Joyce Hutchens and I am proceeding pro se as the plaintiff appellant in this matter. Your Honors, I'm here today because the district court prejudiced me by ignoring nearly all of the evidence I presented to the court in response to my former employer, the Chicago Board of Education's motion for summary judgment. The evidence I presented was relevant and necessary for me to carry my burden of proof and therefore survive summary judgment. And with my evidence ignored nearly in its entirety, it was impossible for me to carry that burden. Your Honors, as you know, initially this lawsuit contained seven counts. I'd like to focus this morning on the four counts I am requesting that the court reinstate. I brought this employment discrimination lawsuit in December 2009 because the board treated me differently than the person I have identified as my similarly situated comparator, Deborah Glowacki, who is white. In June 2009, Glowacki and I were laid off from our positions as curriculum facilitator in the board's professional development unit and I will hereafter refer to it as PDU. The board also laid off numerous other employees at that time, most of whom were all black. Glowacki and I both served in the training and school support unit of the PDU. We both had the same supervisor and we both performed essentially the same duties. However, Glowacki's responsibilities were geared towards national board certification, which is a program designed to prepare teachers to become national board certified teachers, which is the nation's highest teaching credential. At the time of the layoff, then CEO of the board, Ron Huberman, requested that Allen of the human resource division, he was requested by Huberman to dissolve the PDU. The focus of that dismantling of that department of the PDU was the golden teacher. On the day of the June 2009 layoff, Glowacki, who again also had been laid off, arrived home and had an email message awaiting her from Amanda Rivera, who is Hispanic. Amanda Rivera at that time was director of the PDU. The message she left for Glowacki was instructing Glowacki to meet privately with her the following morning and during that meeting, Rivera informed Glowacki that she would be rehired within days. Less than one week later, Glowacki was rehired and assumed the position from which I had been laid off. The undisputed facts which emerged during discovery was that after learning that the national board certification department had to remain open because of substantial funding the program would receive from external entities and also because Mayor Daley wanted that department, the President of the United States wanted that department and so did Arne Duncan, who at that time had just left to become head of Secretary of Education. Allen Anderson specifically asked Amanda Rivera to provide him the names of the people who served the national board certification program. Rivera provided Anderson the names of Deborah Glowacki and Tabita Shafensky, who was my colleague in the national board certification department long before Glowacki had even been hired in the PDU. Rivera intentionally omitted my name from Anderson, therefore ensuring that I would not be provided an equal opportunity to be considered for my own job. Additionally, the job was not posted, which meant I also couldn't even apply for my job. When I brought this lawsuit in July 2009, based on information Allen Anderson received from Rivera, Anderson created a declaration to the EEOC wherein he falsely claimed that I was not supporting the national board certification program and he had personal knowledge of the facts when he prepared the declaration. However, I was supporting the national board certification program until the last day of my employment with the Board of Education. Additionally, it is noted in Allen Anderson's declaration that he had personal knowledge of this information, but according to his deposition testimony, specifically page 96, line 11 through page 98, line 28, he admitted during his deposition that he absolutely had no knowledge of this information. Could I interrupt you just to ask, you filed your suit in 2009, so almost six years ago. Yes. What has explained the long delay in the case getting here? The judge continued the case for almost three years. He what? The judge continued the case for almost three years. There were no extenuating circumstances. I experienced 32 months of continuances. Was it the same judge, Judge Chang? It was. How long was it at the EEOC? Not long at all. I filed my complaint in July and I received my right to sue from the Justice Department about three days later. Three months later, I'm sorry. It didn't take long at all. Rivera's input to Anderson was her sole objective was to cover up from Anderson the fact that she had not identified me as a person when he specifically asked her who was supporting National Board Certification. In fact, Allen Anderson didn't even know I existed until he attended my deposition. Could I get a clarification as to which four claims you are pursuing on this appeal? The three race discriminations and intentional infliction of emotional distress. That is one, two, three, and six. All right. Thank you. Okay. At the time of my layoff, when Anderson specifically asked for this information regarding who was supporting National Board, again, Amanda Rivera omitted that information. I waited 17 months and many, many continuances from the day the board filed this motion for summary judgment before the court ruled on the board's motion in its July 3, 2012 order. The district court concluded that I did not meet the legitimate workplace expectations of my job and there were no genuine issues of material fact. However, other than the board's purported legitimate justification for taking this action against me, they presented not a shred of evidence in support of their claims regarding the deficient quality of my work. Not one. Not one shred. Additionally, in order to create a genuine issue of material fact, my evidence had to be presented, which I did. I had significant evidence and none of the evidence appeared in the judge's order. That white light means you're into your rebuttal time. You can use it now if you want to. I do not wish to. Thank you. Okay. Thank you, Ms. Hutchins. Ms. Dreischmiller? Good morning, Your Honors. Hutchins' only remaining claims on appeal are counts 2 and 3 for alleged race discrimination, a Title VII claim against the board, and a 1983 claim against Amanda Rivera. She voluntarily dismissed count 1 at the district court, as reflected in the record at page 2098. She has waived the intentional infliction of emotional distress claim by not briefing it on appeal. Rivera, the manager Hutchins now accuses of race discrimination, hired Hutchins just a year before they, along with 77% of the unit in which they worked, were laid off. Hutchins does not challenge her layoff on appeal. Rather, she claims Rivera discriminated against her by recommending that the board retain Hutchins' former colleague, Glowacki, when it had to hire someone who could service a particular program the board was retaining. There is no evidence in the record that it was Hutchins', as she says, own job that Glowacki took. Glowacki also worked in that unit. Her layoff was reversed. She continued in the same job that she had before. One of the many distinctions this court may make between Glowacki and Hutchins, which is that Glowacki's managers ever saw her sleep on the job. Well, was she ever reported for sleeping? Was there ever a discipline given or counseling or anything of that nature on this sleeping allegation? That's a good question, Your Honor. There was not. The person that... So that seems that that's sort of an after-the-fact justification that's drawn. The reason for that, Your Honor, is that the person who saw her sleeping was not managing her at that time and did not feel it was her place to discipline her. I don't think it changes... Are there any records of her unsatisfactory job performance? Your Honor... Written records. Pardon? Written records. There are certainly emails that reflect, among other things, that someone... No, records. They were looking for Hutchins'. No, records. Company records. Okay, so other than emails, you mean something like a disciplinary write-up or a review. We have not been able to locate her written review, although plaintiff... What do you mean you haven't been able to locate it in six years? Your Honor, Ms. Hutchins admitted that she had received... I don't think those records exist, otherwise you'd have found them in six years. Well, Ms. Hutchins admitted in her deposition that she had seen a review, that she had seen it. Well, why didn't you have it? I'm not sure, Your Honor. Well, if you destroy records, it doesn't make your case look very good. Your Honor, there's no evidence in the record that the board destroyed the records. Well, what happened to the records? I do not know, Your Honor. Are these standard evaluation records that we're talking about? I'm not sure, Your Honor. The time frame we're talking about is quite some time ago. The evaluation would have been in the 2008-2009 time frame, and... Was it a type of evaluation that every employee in this particular unit would receive? I believe the manager testified that she did reviews for all of her employees at that time, including Ms. Hutchins. Well, she filed this suit in 2009. Why would these evaluations be destroyed? I'm not sure, Your Honor. The record does not contain any evidence of that. Ms. Rivera recommended Glowacki's retention because she believed Glowacki was a better performer. Ms. Hutchins' opinion of her own performance is not legally relevant to that point. The relevant question is not whether the board even correctly believed that Glowacki was the better performer, but whether it genuinely believed that. Because Rivera knew Ms. Hutchins' race when she made the decision to hire her just a year earlier, we may presume she did not discriminate against Ms. Hutchins. Well, no, no. I don't think that's the way that works. It's not a presumption. It's an inference that could be drawn that the same actor would be unlikely to do that, which is something you argue to a jury. It is not something that gets you by summary judgment. Okay. Well, we don't even need to rely on the same actor inference, Your Honor, because the board and Rivera have consistently stated the six reasons why Rivera believed Glowacki was a stronger performer than Ms. Hutchins. They have consistently identified those same six reasons. Ms. Hutchins has never rebutted them. She has never shown that Ms. Rivera's belief in each of those reasons was not genuine. Ms. Hutchins was not similarly situated to Ms. Glowacki, and she cannot show pretext because she does not refute that Ms. Rivera believed. So one of those is this prison teaching background, right? Yes, Your Honor. Where within the Chicago public school system is that experience discounted? Aren't the prison teachers paid at the same rate with the same experience as any other teacher in the school system? Certainly Ms. Hutchins tries to characterize that point as discounting the importance of teaching. Well, where in the Chicago public school system records does it say that you only get 7, 8 percent credit for prison teaching as opposed to other public school teaching? Your Honor, that wasn't Ms. Rivera's concern. As she testified, someone who had taught at the prison school would have less familiarity with the general board practices as related to everything that that particular unit was working on. I would think that, on the contrary, someone who had taught in a prison school would be better equipped to teach in Chicago public schools than someone who had never had that experience. Respectfully, Your Honor, this wasn't about qualification for a teaching position. The position in the PDU was not a teaching position. It was at the central office. It had to do with teacher development, and they were supporting 99 percent of teachers who were in non-prison schools. Only 1 percent of the teachers they supported were in prison schools. So why would Ms. Rivera hire into that if her background wasn't suited for it in the beginning? Because that's what she was to do. No one has alleged, Your Honor, that Ms. So her background must have been good enough for the program. No one has alleged she didn't meet the basic qualifications to work in that unit. It's just a matter of at some point they had to distinguish between employees to decide who would retain a position post-layoff. And it is a fair comparison when you're comparing two people. That doesn't mean she didn't meet the basic qualification to be in the unit, certainly, or she wouldn't have been hired. Ms. Hutchins has not created a fact issue regarding whether Ms. Rivera believed, even mistakenly, that Glowacki's performance was superior to Hutchins. She admits that she has no evidence that she performed better than Ms. Glowacki. She admits she doesn't know what Glowacki's performance reviews were like. But the problem, of course, what you're saying, really, is that any employee's discrimination claim can be rebutted just by an oral statement by an officer that she wasn't as good as someone else. So it just gives carte blanche for discrimination, right? Your Honor, I respectfully disagree. You say, well, it wasn't that she was black. It was that she wasn't as good as the other person. I don't have any record or anything, but that's what I think. That's the end of that. According to you, it justifies summary judgment. Your Honor, I think it's important to note the context of their employment. These two employees only worked in the unit for one year before their layoff. During that time, they reported to three different managers. As I'm sure you understand, managers typically do not review or write up a person who they've supervised for only a few months. They give them a chance to prove themselves and demonstrate their abilities. That is the context in which we're operating here. Additionally, under Title VII, the board is only required to articulate a legitimate nondiscriminatory reason. It has never been the law that it must have made its way into a disciplinary writing. That can't be right, that it's a complete defense merely to, we call, articulate. Merely to say, well, I did it because she wasn't as good as the other one. That's summary judgment? Well, I would add, Your Honor. That's what you're saying. You're saying any company can insulate itself from discrimination claims by just telling its employees, if you fire someone or you don't promote someone, just say, well, I didn't think this person was as good as the other person. Your Honor. That's the end of all these discrimination cases, in your view. I respectfully disagree, and I would add that in. How would she prove discrimination? Well, what I would ask is how is the board supposed to have documented this? This isn't a case where Ms. Hutchins was fired for insufficient performance. This isn't that case. This is a case where the board had to make a hard decision on who to keep following a layoff. It is not the typical practice of employers, in my experience, to consistently rank their employees on who's best when no decision is imminent. That's just not a normal practice, certainly not of the board. This is not a case where Ms. Hutchins was fired for bad performance. It was a difficult and close decision on who to keep following a layoff, and the board has to rely on its manager's opinion based on daily observations of their work in that regard. That isn't the kind of fact pattern where one would expect to see a performance review that relates or particularly given the rotating managers in this situation or a write-up. Okay. Well, thank you, Ms. Crashmeyer. Thank you, Your Honors. Ms. Hutchins, you have a few minutes. May it please the Court. Your Honors, the Chicago Board of Education discriminated against me when Debra Gowacki was hired. My credentials are superior to Debra Gowacki's, and she was earning $7,000 more than I was, and that was before any work performance could be compared. Additionally, as for what counsels about counsel's statement that it was not my job, I have expressed in my statement of facts that Debra Gowacki, and she testified to this, that she was hired specifically to manage the Golden Teacher Program. I was hired specifically to manage National Board Certification. We did do cross-diversifying of skills, which occurred during the reorganization, but any spend the board puts on it, it was my job. In terms of counsel's statement regarding my sleeping, the Court ignored three witness testimonies, including Debra Gowacki, who was testifying for the defendants, that they never saw me sleeping. Supposedly at a meeting, I don't know anything about it, and neither did they. Thank you. Okay. Well, thank you very much, Ms. Hutchins and Ms. Crashmeyer. We'll move to our second case.